## Commonwealth v. Hall

C.P. Chester County, no. 29-94.

*Anthony A. Sarcione,* for defendant.
*Vincent DiFabio,* for plaintiff.

OTT, *J.,* February 9, 1995—This opinion is written in response to Darrick Hall's statement of matters complained of on appeal. The appeal is an automatic direct appeal from the judgments of sentence of death imposed upon Hall by this Chester County Court of Common Pleas on October 29, 1994, in conformance with 42

Pa.C.S. §§722(4), 9711(h)(1) and Pa.R.A.P. 702(b) and 1941.

The sentence was imposed following the jury's verdict that Hall had, beyond a reasonable doubt, committed murder in the first degree, and following a separate penalty phase of the trial. After the penalty phase, the jury found unanimously that there were two aggravating circumstances: 1) that Hall committed the killing while in the perpetration of a felony, and 2) in the commission of the offense, the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense. The jury also found unanimously that there was one mitigating circumstance and that it consisted of the events leading up to the fatal shot including the possibility of a struggle. The jury unanimously found that the aggravating circumstances outweighed the mitigating circumstances and that Hall should be given the death penalty.

The facts of the case are set out adequately in our earlier suppression opinion [June 15, 1994] as is this court's statement of reasons for not suppressing the evidence. This opinion will supplement that first opinion and address the other issues raised as follows:

(1) Whether or not the district attorney engaged in prosecutorial misconduct during his closing argument when he made certain remarks to the jury.

(2) Whether or not the court erred in its instruction to the jury during the penalty phase of the trial regarding aggravating and mitigating circumstances.

(3) Whether or not the court erred in its instruction to the jury concerning the burden of proof for mitigating circumstances.

(4) Whether or not trial counsel was ineffective.

(5) Whether or not the evidence was sufficient to support a conviction of first degree murder.

## PROSECUTORIAL MISCONDUCT

It is well established that not every improper remark by a prosecutor requires the granting of a new trial. *Commonwealth v. Crittenton,* 326 Pa. 25, 191 A. 358 (1937); *Commonwealth v. Rodgers,* 259 Pa. Super. 376, 393 A.2d 876 (1978). In *Commonwealth v. Stoltzfus,* 462 Pa. 43, 61, 337 A.2d 873, 882 (1975), the Supreme Court, restating the holding in *Commonwealth v. Myers,* 290 Pa. 573, 139 A. 374 (1927), held that the language of the prosecuting officer which will justify a reversal must be such that its "unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict."

Alleged prejudicial remarks "must be read in the context of the case as a whole, with a particular view to the evidence presented and reasonable inferences drawn therefrom," to determine whether these remarks are in fact prejudicial. *Commonwealth v. Dennis,* 313 Pa. Super. 415, 423, 460 A.2d 255, 259 (1983). See also, *Commonwealth v. Maxwell,* 505 Pa. 152, 477 A.2d 1309 (1984), *cert. denied,* 105 S.Ct. 370, 469 U.S. 971 (1984) (new trial will not be granted unless it is inevitable that prosecutor's remark prejudices the defendant to such a degree that it prevents the jury from weighing the evidence and rendering a true verdict); *Commonwealth v. Goosby,* 450 Pa. 609, 301 A.2d 673 (1973) (clearly unprofessional conduct for prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw).

While "unnecessary, overly dramatic characterizations" are disallowed, the presiding judge has a great deal of discretion to allow a particular remark, and bases this decision on whether or not the prosecutor

oversteps the "latitude" and "oratorical flair" permitted to him under the law in Pennsylvania.[1] The number of appellate cases which address prosecutorial misstatement (at least 50 in the last three years), have enlarged this concept and produced a rich field for a defendant to mine on appeal. Now defendants' counsel, and rightly so, scour the prosecutors' closing arguments to find any remark or emphasis which might colorably qualify as improper. Unfortunately, this exercise threatens to rob all prosecutorial closing arguments of the "logical force and vigor" needed in any adversarial setting to ethically present a case, and presents the trial judge with the task of passing judgment on every word and phrase that might inflame its hearer and attributing a weight to the degree of inflammation.

---

1. The phrase "oratorical flair" and the word "latitude" are repeated numerous times in the case law and it is interesting research to plumb their origins for guidance in their meaning and application. Some recent examples of acceptable oratorical flair found were: "If the walls and floor could talk, they would tell the jury that appellant committed the crime," *Commonwealth v. Ford,* 539 Pa. 85, 650 A.2d 433 (1995); and use of the word "brutal" in the context of meaning, grossly ruthless, unfeeling, cruel, cold-blooded, harsh, or severe, in *Commonwealth v. Brown,* 538 Pa. 410, 648 A.2d 1177 (1994). Whereas, a prosecutor telling the jury to be "as cold and ruthless as the [defendant] was when he murdered his victims" was held to be *beyond* appropriate oratorical boundaries, *Commonwealth v. Peterkin,* 538 Pa. 455, 649 A.2d 121 (1994).

A trail back from an often cited case, *Commonwealth v. D'Amato,* leads us to what appears to be the seminal use of the word "latitude" and a quoting of the origins of the phrase "oratorical flair," which originated with the use of the phrase "oratorical emphasis" by Judge Learned Hand in 1925. The case, which we believe to have started the overuse of these words was *Commonwealth v. Cronin,* 464 Pa. 138, 346 A.2d 59 (1975). The holding in *Cronin,* however, essentially disallows the giving of the prosecutor's own opinion as to guilt or innocence.

We believe that the law requires two inquiries: Is the prosecutor merely exposing the evidence and making appropriate inferences with some degree of vigor which reflects an interesting use of the English language, or is he stating his own opinion and in doing so, using language which influences the jury's emotions rather than exposing the evidence. We now judge Mr. Sarcione's remarks, taken in context of the whole argument, based on the foregoing understanding of the composite case law.

In the case on appeal, defense complains that the prosecutor made the following remarks in his closing:

"What did we prove here? What did we prove here? I am going to go over the evidence briefly, and then make some inferences to prove the specific intent to kill, especially in homicides, when there is normally two witnesses to the incident, to the murder. The defendant, he certainly witnessed it, he was right there, and Mr. Johnson, who can't speak. He's forever silenced. He won't see another Christmas." (N.T., p. 788.)

"He killed, he knew it, and he would have killed anyone else that tried to stop him when he left that store." (N.T., p. 798.)

"Ladies and gentlemen, I submit to you we have proven our case beyond a reasonable doubt. And I would like to end by stating that the only thing colder than the grave of Mr. Johnson, is this guy's heart. The only thing colder, because he put him there, and he made sure he was going there. Because if he didn't shoot the second time, we might not be here. But he wanted to put him there the first time, and the instinct saved him, and the second time there was no instinct in the world that could have saved him, because he intentionally shot and killed him. And he walked out coolly, calmly, and collected, with a .357 revolver waving at patrons in that store.

"I would ask you to send a message, and that is, you come out here from Philadelphia, as we have proven, and shoot someone like this defendant did, once in the face and once in the back of the head, you are guilty of first degree murder." (N.T., p. 801.)

On page 788 of the notes of testimony, Mr. Sarcione made it clear to the jury that he was going over the evidence and making inferences from that evidence. In doing so, Mr. Sarcione makes reference to the victim never seeing another Christmas. This was certainly relevant to the evidence since the victim was shot just before Christmas and this remark was a good tool for bringing the trial out of the courtroom and into the real world as was done with approval in *Commonwealth v. Thompson,* 538 Pa. 297, 648 A.2d 315 (1994). In the complained of remarks, Mr. Sarcione continues to present to the jury a picture painted from inferences deduced from the evidence, including an inference that the evidence proved a cold-hearted, intentional killing. The reference to the victim being in a "cold grave" and an analogy to the "cold heart" of the person who allegedly put him there was wholly acceptable as oratorical flair when taken in the context of an interpretation of evidence presented, and was not just an opinion of Mr. Sarcione. Defendant's counsel took this remark about the defendant's cold heart out of context. Mr. Sarcione deduced that defendant had a cold heart because of the evidence which he recapitulated in the previous paragraph.

"And about this defendant, to understand his mindset, again, to get into his mind as to how he acted when he shot and killed Mr. Johnson, we also must look at what he did after Moody's. After he was laughing, joking, showing guns, hey, you like this, he went back to Philly, he went back to McDonald's, he ate, went

home, and then he went to visit his daughter. After he shot and killed a man, just went about as in every other perfect normal day. That tells you tons about his mind, what was in it. (N.T., pp. 800-801.)

We find that Mr. Sarcione's closing was, in its entirety, an excellent, honest and not unduly vigorous representation of the Commonwealth. The jury found, after deliberating for three hours and five minutes, that the defendant was guilty of murder in the first degree. The key issue was the degree of murder since there was overwhelming evidence that the defendant was the perpetrator. Mr. Sarcione necessarily, therefore, had to concentrate his remarks on an exposure of the evidence that went to intent and state of mind.

## ERROR IN INSTRUCTION
## DURING PENALTY PHASE

Hall's next complaint is that the trial court erred when it gave the instruction during the penalty phase of the trial. This complaint was based on defense counsel's interpretation of the Pennsylvania Supreme Court's holding in *Commonwealth v. Blount,* 538 Pa. 156, 647 A.2d 199 (1994). In *Blount,* the error occurred when the trial court said to the jury:

"As I told you before, the mitigating circumstances need not be unanimous. However, if they are not unanimous, then you *must* take that into consideration when you are weighing whether the mitigating outweigh the aggravating." *Id.* at 175, 647 A.2d at 209. (emphasis in original) On appeal, the Supreme Court said:

"In making this statement, the trial court, in contravention of the statute, invaded the exclusive function of the jury to assess what weight each factor deserved within the particular case before them. This instruction

had the unavoidable effect of telling the jury that the weight to be accorded to mitigating circumstances was governed by the number of jurors that had found them to exist—*i.e.,* how weighty or serious can the evidence in mitigation be if only a few members of the jury found it." *Id.* at 176, 647 A.2d at 209.

This court's charge on aggravating and mitigating circumstances was as follows:

"Members of the jury, you must now decide whether to sentence the defendant to death or life imprisonment. Your sentence will depend upon what you find about aggravating and mitigating circumstances. The Sentencing Code defines aggravating and mitigating circumstances. They are things that make a first degree murder case either more terrible or less terrible.

"Your verdict must be a sentence of death if you unanimously find, that is, if all of you find at least one aggravating and no mitigating circumstance, or if you unanimously find one or more aggravating circumstances which outweigh any mitigating circumstances. If you do not all agree on one or the other of these two findings, then the only verdict that you may return is a sentence of life imprisonment.

"The Commonwealth must prove any aggravating circumstance beyond a reasonable doubt. This does not mean that the Commonwealth must prove the aggravating circumstance beyond all doubt or to a mathematical certainty. A reasonable doubt is the kind of doubt that would cause a reasonable and sensible person to hesitate before acting upon a matter of importance in his or her own affairs. A reasonable doubt must be a real doubt. It may not be one that a juror imagines or makes up to avoid carrying out an unpleasant duty.

"By contrast, the defendant must prove any mitigating circumstance. However, he only has to prove it by the

preponderance of the evidence, that is, the greater weight of the evidence.

"In this case, under the Sentencing Code, only the following matters, if proven to your satisfaction beyond a reasonable doubt, can be aggravating circumstances: one, that the defendant committed a killing while in the perpetration of a felony; two, in the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense.

"In this case, under the Sentencing Code, the following matters, if proven to your satisfaction by a preponderance of the evidence, can be mitigating circumstances: one, the age of the defendant at the time of the crime; two, any other evidence of mitigation concerning the character and record of the defendant and the circumstances of this offense.

"You have been given a sentencing verdict slip on which to record your verdict and findings. And I would now like to give you some instructions about how to go about reaching your verdict by using that slip.

"When you are in the jury room, read the verdict slip before you begin to discuss the case. Do not write anything on the slip unless and until you have finished your deliberations and agreed on your sentence. Use the verdict slip for only one thing, to record your sentencing verdict and findings.

"As I told you earlier, you must unanimously agree on one of the two general findings before you can sentence the defendant to death. They are that a finding—they are a finding that there is at least one mitigating circumstance—I'm sorry. I'm sorry.

"They are a finding that there is at least one aggravating circumstance and no mitigating circumstances or a finding that there are one or more aggravating circumstances which outweigh any mitigating circum-

stances. Do not simply count their number. Compare the seriousness and importance of the aggravating with the mitigating circumstances. If you all agree on either one of the two general findings, then you can and must sentence the defendant to death.

"When voting on the general findings, you are to regard a particular aggravating circumstance as present only if you all agree that it is present. On the other hand, each of you is free to regard a particular mitigating circumstance as present despite what the other jurors may believe. This different treatment of aggravating and mitigating circumstances is one of the law's safeguards against unjust death sentences. It gives the defendant full benefit of any mitigating circumstances. It is closely related to the burden of proof for these requirements. Remember, the Commonwealth must prove any aggravating circumstances beyond a reasonable doubt while the defendant only has to prove mitigating circumstances by a preponderance of the evidence." (N.T., pp. 927-931.)

Taking into consideration that the standard for review of a jury instruction is that it must be read in its entirety, *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 46, 454 A.2d 937, 953 (1982), we find in this comprehensive instruction no clouding of the jury's province to assess the weight to be accorded to mitigating circumstances. To the contrary, the jury was instructed not to simply count votes, but to individually make the assessment.

The argument of the defendant's counsel that the court invaded the jury's province is simply without merit.

## IMPROPER DEFINITION BY THE COURT

Hall's next complaint is that during the penalty phase of the trial this judge erred in improperly defining "preponderance of the evidence" as the defense's burden

of proof with regard to mitigating circumstances. The relevant portion of the court's instruction was as follows:

"The Commonwealth must prove any aggravating circumstance beyond a reasonable doubt. This does not mean that the Commonwealth must prove the aggravating circumstance beyond all doubt or to a mathematical certainty. A reasonable doubt is the kind of doubt that would cause a reasonable and sensible person to hesitate before acting upon a matter of importance in his or her own affairs. A reasonable doubt must be a real doubt. It may not be one that a juror imagines or makes up to avoid carrying out an unpleasant duty.

"By contrast, the defendant must prove any mitigating circumstance. However, he only has to prove it by the preponderance of the evidence, that is, the greater weight of the evidence.

"In this case, under the Sentencing Code, only the following matters, if proven to your satisfaction beyond a reasonable doubt, can be aggravating circumstances: one, that the defendant committed a killing while in the perpetration of a felony; two, in the commission of the offense the defendant knowingly created a grave risk of death to another person in addition to the victim of the offense.

"In this case, under the Sentencing Code, the following matters, if proven to your satisfaction by a preponderance of the evidence, can be mitigating circumstances: one, the age of the defendant at the time of the crime; two, any other evidence of mitigation concerning the character and record of the defendant and the circumstances of this offense." (N.T., pp. 928-929.)

While it is true that the instruction on preponderance was terse, it was given in contrast to the immediately preceding instruction on the greater burden of "without a reasonable doubt," which contrast served to amplify

the instruction. Moreover, it was read directly from the standard jury instruction, Pa. SSJI (Crim.) 15.2502F. In *Commonwealth v. Wilson,* 538 Pa. 485, 649 A.2d 435 (1994), a much sparser instruction on "preponderance" was considered sufficient. In that case, the judge said, "a preponderance of the evidence exists when one side is more believable than the other side."

INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In addition to the substance of the three complaints above, the appeals counsel claims ineffective assistance of trial counsel because trial counsel did not object to any of the above alleged errors. This claim falls because none of the errors had any merit, and therefore, none of them supplied cause for objection.

Appeals counsel also claims ineffectiveness due to the fact that trial counsel was guilty of the following:

(1) Failing to call as witnesses friends and family members who were present in the courtroom and available to testify on behalf of the defendant.

(2) Failing to present evidence as to the defendant's educational background.

(3) Failing to present evidence as to the defendant's employment history through work records or testimony of employers.

On October 28, 1994, defense counsel had several witnesses present who were willing to testify on behalf of the defendant. The first witness called was Sandra Hall, the defendant's mother. Mrs. Hall testified extensively and was cross-examined as well. After his mother's turn on the witness stand, the defendant decided that he did not want any of his other friends or relatives called. Defense counsel informed the court

that his client was "emphatically" opposed to anyone doing so, saying:

"I realize that I am counsel to him, and ultimately who I call is really my responsibility, but I will use the same analogy with the court: I am driving the car, but it's his car, Judge, and I don't know what—I just would rather abide by his wishes at this point.

"I would ask he be colloquied on the record in regards to this, and be subject to questioning in regards to his specific desires." (N.T., pp. 889-890.)

After being colloquied on his desire not to testify, Hall's counsel had another discussion with him and Hall changed his mind about having further witnesses testify. (N.T., p. 893.) Ursula Jenkins, the mother of Hall's child, then took the stand. After her testimony, Hall again apparently decided that he did not want further witnesses. (See N.T., p. 913. Where defense rests after a discussion with his client.) Acquiescing to his client's emphatic wishes after diligent[2] counseling does not constitute ineffective assistance of counsel. There was no testimony as to work history or education except that provided by Hall's mother and neither Hall's work history nor educational background seemed to have the potential of establishing mitigation. Although mitigation is to be determined by the jury, in order to establish grounds for ineffective assistance of counsel the decision not to call witnesses on any factor must be held against the standard. The standard against which all of the claims of ineffectiveness must be examined has been set out by the Pennsylvania Supreme Court and quoted by the Superior Court in *Commonwealth*

---

2. Although the record does not reflect the specific advice given, the court observed the concern of counsel and his manner with his client.

*v. Thuy,* 424 Pa. Super. 482, 623 A.2d 327 (1993), as follows:

" 'Because the law presumes that counsel is effective, the burden of establishing ineffectiveness rests with appellant.' ... The standard used to evaluate claims of ineffective assistance of counsel has been stated by the Pennsylvania Supreme Court in the following manner:

"The threshold inquiry in such claims is whether the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim. ... If this threshold is met, it must next be established that the particular course chosen by counsel had no reasonable basis designed to effectuate his client's interests. ... Finally, we require that the defendant establish how counsel's commission or omission prejudiced him. ...

"To establish prejudice under this standard 'requires [a] showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable' Moreover, '[b]efore a claim of ineffectiveness can be sustained, it must be determined that, in light of all the alternatives available to counsel, the strategy actually employed was so unreasonable that no competent lawyer would have chosen it. ...' We inquire whether counsel made an informed choice, which at the time the decision was made reasonably could have been considered to advance and protect defendant's interests. ... Thus, counsel's assistance is deemed constitutionally effective once we are able to conclude the particular course chosen by counsel had some reasonable basis designated to effectuate his client's interests. The test is not whether other alternatives

were more reasonable, employing a hindsight evaluation of the record." *Thuy,* 424 Pa. Super. at 486-488, 623 A.2d at 329-330.

## INSUFFICIENCY OF EVIDENCE

Finally, appeals counsel claims insufficiency of the evidence and, according to the rules for death penalty cases, this will be given an independent review by the Supreme Court.