# Commonwealth v. Taylor

*Alan M. Rubenstein,* for Commonwealth.
*Thomas Q. Ciccone,* for defendant.

SCOTT, *J.,* February 10, 1995—Rainey Taylor, defendant, has appealed the conviction of criminal attempt to lure a child into a motor vehicle and harassment.

On December 26, 1993, the defendant approached an 11-year-old male child who was playing in Silver Lake County Park, Bristol Township, Bucks County, Pa. The defendant engaged the child in conversation and asked him if he wanted to look at his van. There was also testimony that the defendant attempted to shake the hand of the child and did so by reaching out to grasp the hand of the child. The child told the defendant that he did not want to look at his van, and told the defendant that his parents and cousins were on the premises with him even though he was, in fact, alone. Apparently the defendant walked back to his van and drove out of the parking lot "very fast."

There were at least two other automobiles in the parking area that day and the occupants of those automobiles witnessed the event and testified on behalf

of the Commonwealth. Both of the witnesses testified that the defendant stopped his van, got out of it immediately and began to walk toward the child. The first witness, Raymond Dessatel, questioned the child about whether or not he knew the defendant and reminded him not to talk "to anyone like that."

"A. I turned toward the boy, threw the trash out. I asked the boy, 'Did you know that guy?' He said, 'No.' I said, 'You don't ever talk to anybody like that.' He said, 'I know. He wanted me to get in the truck with him.' So then I turned back around, he was gone. He started to take off with his—van—the little van." (N.T. p. 50, May 24, 1994.)

This witness followed the defendant out onto Route 13. While attempting to follow the defendant, the witness noticed a police car and managed to get the attention of the officer inside. The officer then pursued the defendant.

The second witness, Nicholas Trolli, essentially confirmed the testimony of the first witness, and testified as to what he saw:

"Q. Now at the time they were together can you describe the mannerism of the man, what you saw him do?

"A. Well, he immediately got out of the vehicle, went right over to the little boy. At first I thought, 'Geez, does he know him?' And it appeared this little boy—the little boy—more the little boy's mannerisms that were bothering me than his. And the little boy seemed very frightened, you know, and he was pulling back from the man. And the man was being very aggressive in his mannerism toward the little boy, you know. Like I heard him—I did hear the word 'come' and, you know, he was pointing towards his vehicle. So, I mean, at first I thought, 'Is this the kid's father'

or what not. I thought to get out of my car and see what was going on. I didn't because when I was considering that the other guy came over towards them and then he practically ran to his car and he squealed wheels out of the parking lot." (N.T. pp. 65-66, May 24, 1994.)

Mr. Trolli had a car telephone and was able to contact the police while witnessing the incident. He then pursued the defendant out of the park and through the intersection in question. At that point, the defendant was stopped by Officer George Nevel of the Bristol Township Police Department. The defendant was subsequently charged with three counts of harassment, criminal attempt, disorderly conduct and luring a child into a motor vehicle.

A waiver trial was conducted before the undersigned on May 24, 1994. At that time, the defendant was found guilty of criminal attempt to lure a child, found at 18 Pa.C.S. §§901 and 2901, and harassment, found at 18 Pa.C.S. §2709(2).

The sentencing of the defendant was deferred until a pre-sentence investigation could be conducted. The court also continued the defendant's bail, and ordered him to continue counselling with Dr. John Rosella, a psychologist that had been treating him. Finally, the court forbade all contact with the victim and forbade the defendant to go to any federal, state or local parks. Thereafter, the defendant retained new counsel. Counsel filed post-trial motions in a timely manner. At sentencing, counsel was advised by the court that the post-trial motions would be considered post-sentence motions, so long as defendant filed the appropriate motion within 10 days. Counsel chose, instead, to take a direct appeal. The defendant was subsequently sentenced on August 10, 1994 to reporting probation for a period of 24 months. The court also ordered that a plan must

be submitted to the Probation Department within four weeks regarding: 1) appropriate treatment program; 2) structured supervision program; 3) verify that defendant is in treatment. After sentencing, the defendant filed the instant appeal to Superior Court.

Defendant raises the following issues on appeal:

(1) It is contended that trial counsel was ineffective in failing to file pre-trial motions in the following areas:

(a) Defendant was, at the time of trial, incompetent to stand trial and defense counsel failed to raise this issue in a motion and failed to present competent evidence by psychiatrists and psychologists who would testify this incompetence notwithstanding the fact that defense counsel had sufficient information prior to trial to conclude that such motion was necessary.

(b) Defense counsel was ineffective in that he failed to file motions to quash the transcript of the preliminary hearing on the above captioned matter since the acts averred by the Commonwealth did not constitute a prima facie case.

(c) Defense counsel was ineffective in that he failed to call a substantial number of character witnesses whose names were available and known to him and who would have testified not only that defendant was of non-violent disposition but that defendant was an honest, peaceful and law abiding citizen.

(2) The verdict was against the evidence. The evidence presented in the case in chief, in a light most favorable to the Commonwealth, did not establish that the defendant intended to lure the child into a vehicle.

(3) The verdict was against the weight of the evidence taken in balance, even in a light most favorable to the Commonwealth there were sufficient alternative possibilities of interpretation of the evidence presented to

conclude that the defendant was having no more than an innocent conversation with the child. Moreover the flight of the defendant from two pursuers, given the mental age of the defendant was not sufficient to demonstrate flight as an indication of knowledge of guilt.

(4) The verdict was contrary to law. The pertinent statute on luring demands something less vague than an inference of guilt unsupported by any concrete evidence.

The first three averments of error address ineffectiveness of trial counsel. The standard for direct appeal on an ineffectiveness of counsel claim was set forth once again in *Commonwealth v. Blount,* 538 Pa. 156, 647 A.2d 199 (1994). They are: (1) the underlying claim is of arguable merit; (2) the particular course chosen by counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness prejudiced him.

The first averment of error, that of failure to file pre-trial motions regarding competency is meritless in light of the fact that the defendant called Dr. Rosella at trial to testify as to the defendant's intelligence and level of cognitive and emotional functioning.

The second averment regarding effectiveness of counsel addresses the failure of counsel to file pre-trial motions to quash the transcript of the preliminary hearing. Using the standard set forth in *Blount* regarding the underlying claim, we must consider the purpose of the preliminary hearing in the criminal trial process.

"The primary reason for the preliminary hearing is to protect an individual's right against unlawful arrest and detention. It seeks to prevent a person from being imprisoned or required to enter bail for a crime which was never committed, or for a crime with which there is no evidence of his connection. ..." *Commonwealth*

*v. Hess,* 489 Pa. 580, 586, 414 A.2d 1043, 1046 (1980) citing *Commonwealth ex rel. Maisenhelder v. Rundle,* 414 Pa. 11, 15, 198 A.2d 565, 567 (1964).

Using this standard it is clear that the evidence was sufficient to hold the case for court. Additionally, once a defendant has gone to trial and been found guilty of a crime, any defect in the preliminary hearing is rendered immaterial. *Commonwealth v. Tyler,* 402 Pa. Super. 429, 587 A.2d 326 (1991).

With regard to the final averment of error regarding effectiveness of counsel, that of the failure of counsel to call character witnesses, we can only respond that counsel did, in fact, call two witnesses whose testimony was in the nature of character testimony. As a result, this averment of error is meritless. The defendant called two witnesses, Helen Burn and Elaine Guertin who testified that they had known the defendant for many years. They testified regarding his normal behavior, mannerisms and habits of interaction.

The remaining three averments of error deal with the weight and sufficiency of the evidence. The standard for the review of the evidence is that the evidence is sufficient to sustain conviction if it supports the verdict beyond a reasonable doubt when construed in the light most favorable to the Commonwealth with all proper inferences drawn favoring the Commonwealth. *Commonwealth v. Holbrook,* 427 Pa. Super. 387, 629 A.2d 154 (1993). *Commonwealth v. Galloway,* 302 Pa. Super. 145, 448 A.2d 568 (1982). In passing upon the sufficiency of the evidence, the evidence must be evaluated upon the entire trial record. *Commonwealth v. Waller,* 498 Pa. 33, 444 A.2d 653 (1982).

The child testified regarding the incident.

"Q. And when he approached you, what did he say to you?

"A. He told me his name and asked me if I'd like to see his van.

"Q. You remember what his name was?

"A. No.

"Q. And what did you say when he asked you to see his van—if you wanted to see his van?

"A. No.

"Q. And what was the next thing that was said?

"A. He said it had a big inside and if I wanted to see it ... .

"Q. What is the next thing he said to you after you said no?

"A. He said, 'It has a big inside. Do you still want to see it?'

"Q. Okay.

"A. I said no again.

"Q. What was the next thing that he said, do you remember?

"A. He told me he had a trailer in his backyard ...

"Q. Okay. And the three or four times that he asked you if you wanted to see his van, what was your answer?

"A. No. Then I told him my parents were walking around the park and my cousins were on the swings.

"Q. Why did you tell him that?

"A. So that we would just walk away.

"Q. Were your parents walking around the park?

"A. No.

"Q. Were any people walking around the park?

"A. Yes.

"Q. You know who those people were?

"A. No.

"Q. Okay. Did you tell this guy that they were your parents?

"A. Yes.

"Q. At what point did you tell him they were your parents.

"A. When he started coming towards me and I was walking back.

"Q. Okay. How close was he to you?

"A. About a foot away ...

"Q. Okay. Did he touch you at all?

"A. No.

"Q. Did he try to touch you at all?

"A. Yes.

"Q. What happened—what happened?

"A. He was about to shake my hand.

"Q. Okay. And what did he say when he was about to shake your hand?

"A. Told me his name." (N.T. pp. 21-24, May 24,1994.)

The court found this testimony to be credible and compelling.

Finally, the defendant testified in his own defense. His testimony was consistent with the testimony of the Commonwealth witnesses and the victim. The court had ample opportunity to observe his demeanor and he repeatedly denied any wrongdoing. He kept saying, in one form or another, that he did not do it. The court interpreted these remarks as evidence of a guilty mind. The evidence, in its totality, convinced us that the defendant was, in fact, guilty of the offense.

For the foregoing reasons, we found the defendant guilty of criminal attempt to lure a child into a motor vehicle and harassment.