725 A.2d 750

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Dennis J. DUPERT, Appellee.**

Supreme Court of Pennsylvania.

Submitted July 16, 1998.

Decided March 25, 1999.

Michael A. George, Dist. Atty., for Com.

Garrett D. Page, Blue Bell, for Dennis Dupert.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## ***ORDER***

PER CURIAM:

AND NOW, this 25 th day of March, 1999, the appeal in the above captioned case is dismissed as improvidently granted.

Justice NEWMAN files a dissenting statement in which Justices ZAPPALA and CASTILLE join.

NEWMAN, Justice, dissenting.

By *per curiam* Order, this Court has dismissed this appeal as improvidently granted. The parties submitted this case to us on its briefs. Because I believe that the Superior Court ignored the proper standard of review to reverse the Post Conviction Relief Act (PCRA) court, I must dissent.

We granted allocatur to resolve two issues. First, the Commonwealth asked whether, in this case, Appellee's trial counsel was ineffective for failing to call character witnesses at trial. Second, the Commonwealth sought our determination

whether the record in this case supported the PCRA court's findings of fact.

## FACTUAL AND PROCEDURAL HISTORY

On August 12, 1994, the daughter of Dennis Dupert, after attending a week of band camp, returned to her home with four of her friends, who were fifteen (15) and sixteen (16) year-olds. The young women decided to have a party at the Dupert house, and Mrs. Dupert purchased alcohol for the party. After imbibing alcohol, two of the girls and Dupert's daughter retired to her upstairs bedroom and went to sleep, while the two other girls had passed out in the basement. During the late evening of August 12 and the early morning of August 13, 1994, Dupert sexually assaulted the two girls in the basement. One girl awoke to find Dupert raping her. When she repelled his attack, Dupert stopped having intercourse but began to perform cunnilingus on her. After she succeeded in fending off the sexual violations by Dupert, he advanced to the other sleeping girl. Dupert started kissing this girl on her legs, moving upward toward her vagina. She awoke and prevented additional sexual assault by curling her body into a ball.

Dupert was charged with rape,[1] two counts of aggravated indecent assault,[2] and four counts of indecent assault.[3] On February 15, 1995, the jury convicted Dupert of all charges but two counts of indecent assault.[4] The trial court sentenced him concurrently to seven (7) to fifteen (15) years of imprisonment, plus fines and costs, for the rape charge, two (2) to four (4) years of imprisonment, plus costs, for the aggravated indecent assault charges, and three (3) months to twenty-four (24) months of imprisonment, plus costs, for two (2) of the indecent assault charges. Additionally, the trial court ordered

1. 18 Pa.C.S.A. § 3121(3).
2. 18 Pa.C.S.A. § 3125(1).
3. 18 Pa.C.S.A. § 3126(a)(1) and 18 Pa.C.S.A. § 3126(a)(3).
4. The jury did not convict Dupert of the two counts of indecent assault by threat of forcible compulsion, pursuant to 18 Pa.C.S.A. § 3126(a)(3).

Dupert to make restitution to reimburse the rape victim's family.

Almost one year after his judgment of sentence, Dupert petitioned for post-conviction relief, pursuant to the PCRA. *See* 42 Pa.C.S.A. § 9541 *et seq.* Dupert did not file a direct appeal from his judgment of sentence. In his PCRA petition, Dupert alleged ineffective assistance of counsel because his trial counsel failed to 1) call an important fact witness; 2) file a motion to modify his sentences; and 3) discuss with him the importance of character witnesses and produce character witnesses for him. We are only reviewing the issue of character witnesses at this time. On August 13, 1996, the PCRA court conducted an evidentiary hearing. The PCRA court heard testimony concerning the absence of character witnesses at trial from Dupert's trial counsel, Allen Welch (Welch), Dupert's father, Clarence Dupert, and several other witnesses. Dupert did not testify at his PCRA hearing, and he had not testified in his case during trial.

Welch testified that, although he could not recall the specifics of all of his conversations with Dupert, they had discussed his case on numerous occasions.[5] After discussing trial strategy and potential witnesses with Dupert, Welch concluded that they had virtually nobody who could testify about what happened on the night in question. N.T. PCRA Hearing, Aug. 13, 1996 at 8 (R.R. at 12). Welch also stated that he had determined that he could not present a viable alibi defense or mental health defense. Early in their meetings, Welch told Dupert that his case would rest primarily on his credibility versus the credibility of the two victims. *Id.* at 8–9 (R.R. 12–13).

On both direct examination and cross-examination, Welch told the court what he remembered about his representation of Dupert and about his customary practices for defending the criminally accused. Welch acknowledged that he had no distinct recollection of discussing the use of character wit-

---

5. While this case demonstrates the importance of comprehensive documentation by attorneys, it must be noted that more than a year and a half had passed between the trial and the PCRA hearing.

nesses with Dupert. *Id.* at 13, 16–17, 38–39 (R.R. at 17, 20–21, 42–43). Welch was fully aware of the importance of calling character witnesses and had done so often during his fifteen (15) years of practice, both as a public defender and private criminal defense attorney, and Welch had tried more than 175 cases. Welch confirmed that, as a matter of strategy, he prefers not to use character witnesses, if he cannot locate at least five (5) people willing to testify. *Id.* at 14–15, 16, 31 (R.R. at 18–19, 20, 35). Welch stated that it is his customary practice where credibility is an issue to ask his clients for the names of people who could be character witnesses and investigate any names that a client provides. *Id.* at 14–15, 31–32, 37–39, (R.R. at 18–19, 35–36, 41–43). After interviewing all potential character witnesses, Welch makes a recommendation to his client. He testified that if a client insists on calling a character witness, regardless of his preference, Welch would use that person, if he or she were available. *Id.* at 31–32 (R.R. 35–36). Welch explained that his process of investigating, interviewing, and choosing character witnesses generates a clear paper trail. Because Dupert's file does not indicate the existence of any character witnesses, Welch was fairly certain that Dupert had not given him any names to investigate. *Id.* at 15–17, 30, 32–33 (R.R. at 19–21, 34, 36–37). On cross-examination, Welch stated that:

> I have nothing here. So I can state with absolute certainty that the subject of character witnesses was never pursued.

*Id.* at 33 (R.R. 37). On redirect, Welch reiterated that:

> I only know that I was never told that there are character witnesses because if I would have been told there were character witnesses, we would have jumped on the character witnesses just like we do in every other case where character witnesses come into play.

*Id.* at 39 (R.R. 43).

The trial court also heard from Dupert's father, who testified that he discussed character witnesses with Welch and his son during their second meeting, and he had offered to give Welch a list of names of people willing to testify, but Welch never asked for the names or contacted anyone on the list.

*Id.* at 68–69, 72–73 (R.R. 72–73, 76–77). Welch denied having ever seen such a list, stating that if he had seen such a list, he would have attempted to speak with the potential character witnesses. *Id.* at 28, 39 (R.R. 32, 42). Dupert's father explained that neither he nor his son mentioned character witnesses to Welch again because Welch had told them that he was handling the case and would let them know if he wanted to see the list. *Id.* at 68, 73 (R.R. 72, 77).

On the issue of character evidence, at the PCRA hearing, two other witnesses testified for Dupert. Three other witnesses appeared to testify about their role as character witnesses. Rather than having multiple witnesses provide repetitious testimony, the PCRA court relaxed the rules of evidence and allowed Dupert's counsel to ask the three witnesses questions through a colloquy to elicit concise, relevant responses. All of the five people claimed that they were willing and able to testify at the trial about Dupert's reputation as a truthful and law-abiding person, but Welch had contacted none of them. *Id.* at 42–60 (R.R. 46–64).

Faced with the conflicting testimony of the witnesses, the PCRA court had the task of determining whether Welch ever discussed the subject of character witnesses with Dupert and, if so, whether Dupert ever offered to provide any names to his attorney. The PCRA court concluded that Welch had conversed with Dupert about character witnesses, but neither Dupert nor anyone else offered to give Welch any names. Crucial to the analysis of the PCRA court was its belief that Welch understood the value of using character witnesses in this case, and he always investigated potential character witnesses when names were available. The PCRA court reasoned that had Dupert's father possessed a list of character witnesses, he would have said something to Welch during the trial, which he did not do.

## ANALYSIS

The standard of review used by an appellate court when reviewing a grant or denial of relief by a PCRA court is limited in scope. Absent a finding of fact or conclusion of law

based on insufficient evidence or legal error, an appellate court should not upset the ruling of the PCRA court. *Commonwealth v. Morales*, 549 Pa. 400, 408, 701 A.2d 516, 520 (1997). In order to obtain relief under the PCRA, an appellant sustains the burden of pleading and proving by a preponderance of the evidence that his conviction or sentence resulted from at least one of the errors set forth in Section 9543(a)(2), he has not previously litigated or waived any of the issues he raises, and the decision to forego litigating the issues was not tactical. 42 Pa.C.S.A. § 9543(a).

## INEFFECTIVE ASSISTANCE OF COUNSEL

When an appellant alleges his counsel was ineffective, he must show by a preponderance of evidence that the ineffectiveness of counsel "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. (a)(2)(ii). *See generally Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326 (1999). To establish this ineffectiveness, the appellant must prove that: (1) the underlying claim is of arguable merit; (2) the counsel had no reasonable basis for his conduct; and (3) the ineffectiveness caused the appellant prejudice. *Commonwealth v. Copenhefer*, 553 Pa. 285, 719 A.2d 242, 250 (1998); *Commonwealth v. Weiss*, 530 Pa. 1, 5–6, 606 A.2d 439, 441–42 (1992). The presumption is that counsel was effective when representing his client. *Commonwealth v. Baez*, 554 Pa. 66, 720 A.2d 711, 733 (1998) (citing *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d, 233 (1981)). To establish ineffectiveness because counsel failed to call character witnesses, the appellant must demonstrate that witnesses existed, they were available and willing to testify on his behalf at the trial, his counsel had an awareness of, or a duty to know of, the witnesses, and their proposed testimony was necessary to avoid prejudice. *Copenhefer*, 553 Pa. 254, 719 A.2d at 254; *Morales*, 549 Pa. at 419–20, 701 A.2d at 525–26.

## ARGUABLE MERIT

The first step toward establishing ineffectiveness of counsel is to determine whether the defendant's claim has arguable

merit. In other words, was a presentation of character witnesses vital to the determination of the defendant's trial? Although a criminal defendant may always present character evidence, there is no *per se* rule that, in all instances, trial counsel should attempt to locate and use character witnesses. *Commonwealth v. Blount*, 538 Pa. 156, 170–71, 647 A.2d 199, 206–07 (1994). However, in situations where proving credibility may be critical in persuading a jury of a defendant's guilt or innocence, such as where there are only two direct witnesses to an occurrence, presenting character evidence becomes essential. *See Weiss*, 530 Pa. at 6, 606 A.2d at 442 (rape); *Commonwealth v. Gillespie*, 423 Pa.Super. 128, 132, 620 A.2d 1143, 1145 (1993) (simple assault); *Commonwealth v. Carter*, 409 Pa.Super. 184, 196–97, 597 A.2d 1156, 1162 (1991), *alloc. denied*, 530 Pa. 664, 610 A.2d 44 (1992) (rape); *Commonwealth v. Simler*, 320 Pa.Super. 342, 345, 467 A.2d 355, 357 (1983) (simple assault) *Commonwealth v. Luther*, 317 Pa.Super. 41, 50–51, 463 A.2d 1073, 1078 (1983) (rape).

The facts of each case will determine whether counsel was ineffective for failing to call character witnesses. In *Weiss*, the defendant was convicted of rape, statutory rape, incest, indecent assault, simple assault, endangering the welfare of a child, and corruption of a minor. *Weiss*, 530 Pa. at 3, 606 A.2d at 440. After the Superior Court affirmed the judgment of sentence, the defendant appealed to this Court, claiming that trial counsel was ineffective for failing to call character witnesses. *Id.* at 3–5, 606 A.2d at 440–41. We concluded that the defendant's claim had arguable merit because the only two direct witnesses were the defendant and the victim, and the defendant's trial counsel had called no character witnesses in a case resting primarily on appellant's credibility. *Id.* at 6, 606 A.2d at 442.

In *Luther*, the defendant was convicted of rape. *Luther*, 317 Pa.Super. at 44, 463 A.2d at 1074–75. As in *Weiss*, the defendant appealed to the Superior Court, claiming that his trial counsel was ineffective for failing to call character witnesses at trial. *Id.* at 44, 463 A.2d at 1075. There were only

two true, direct witnesses, the complainant and the defendant.[6] *Id.* at 44–46, 463 A.2d at 1075–76. The Superior Court found that because credibility and intent were "decisive factors," in that case, there was arguable merit that the defendant's trial counsel was ineffective for forgoing character witnesses. *Id.* at 51, 463 A.2d at 1078.

In *Carter,* the defendant had been convicted of rape, involuntary deviate sexual intercourse, robbery, burglary, and conspiracy. *Carter,* 409 Pa.Super. at 186, 597 A.2d at 1156. In a reinstated appeal to the Superior Court, the defendant alleged a variety of claims of ineffectiveness against his first appellate counsel. *Id.* at 186–87, 597 A.2d at 1157. There were layered claims of ineffectiveness, including appellate counsel's ineffectiveness for not raising the issue in the earlier appeal of trial counsel's ineffectiveness for not calling character witnesses. *Id.* The Superior Court held that the allegation that the trial counsel failed to discuss with the defendant the possible use of character witnesses had arguable merit. *Id.* at 199, 597 A.2d at 1163. Because there had not been a preliminary hearing on that issue, the Superior Court remanded the case to the trial court to conduct a hearing to allow the defendant an opportunity to develop the record to support his claims that his trial counsel failed to discuss the use of character witnesses and lacked a reasonable basis for his inaction, and to permit the prosecution to rebut the defendant's claims. *Id.*

The number of direct witnesses does not substantively distinguish the case *sub judice* from *Weiss, Luther,* or *Carter.* Although more than two people directly observed what occurred in the basement, bolstering Dupert's credibility at trial was no less important. It is immaterial that Dupert chose not to testify because the jury's decision to acquit or convict still rested primarily on whether they believed the story of the victims or the defendant. Several potential character witnesses stated at the PCRA hearing that they were available

6. It should be noted that the complainant's eight (8) year-old son, her examining physician, the two arresting officers, and the defendant's mother also testified. *Luther,* 317 Pa.Super. at 46–48, 463 A.2d at 1075–76.

and willing to testify at the trial to Dupert's good character, but the trial counsel never contacted them. Therefore, Dupert's claim has arguable merit.

## REASONABLE BASIS

The second step for a court evaluating a claim of ineffective counsel is to determine whether trial counsel has any reasonable basis for failing to call character witnesses. Here, some crucial distinctions exist between the present case and other cases where trial counsel failed to call character witnesses on behalf of their clients.

The trial court in *Weiss* found that the defendant had given his trial counsel names of several possible character witnesses who were willing to testify. *Weiss*, 530 Pa. at 7, 606 A.2d at 442. The trial counsel admitted at the hearing that he could not recall whether he contacted all of the people provided by his client. *Id.* at 7, 606 A.2d at 442–43. For those people he did contact, he did not do so until the day before the trial. *Id.* at 7, 606 A.2d at 443. The trial counsel also admitted that he never discussed with the defendant his decision not to use character witnesses. *Id.* He based his decision not on legal strategy, but on lack of information.

In *Luther*, the trial counsel offered two explanations for his decision not to call character witnesses. *Luther*, 317 Pa.Super. at 51–54, 463 A.2d at 1079–80. First, he claimed that the defendant never provided him with names. *Id.* Second, as a tactical matter, he feared that presentation of good character evidence would cause more harm than good by opening the door to opposing testimony of the defendant's prior bad acts and behavior. *Id.* The Superior Court held that both rationales were unreasonable. *Id.* at 54–55, 463 A.2d at 1080. A trial counsel cannot fault his client for failing to provide names of character witnesses, if witnesses were available, when the trial counsel has been derelict in not adequately discussing with his client the importance of such a defense. *Id.* at 52–53, 463 A.2d at 1078–79. The Superior Court also noted that the defendant had no criminal record, the prosecution could not cross-examine character witnesses about bad acts or conduct

that were outside of the scope of character evidence elicited on direct examination, and it was likely that the good character evidence would outweigh any unfavorable evidence developed on cross-examination. *Id.* at 53–54, 463 A.2d at 1079–80.

A fundamental similarity between *Weiss* and *Luther* is that both trial courts concluded that trial counsel was aware, or had a duty to know, of potential character witnesses. The reasonableness of a trial counsel's investigations into character witnesses depends on the information supplied to him by his client. *Commonwealth v. Peterkin,* 511 Pa. 299, 319, 513 A.2d 373. 383 (1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987). Where a trial counsel has apprised his client of the importance of character witnesses, but the client refuses to provide any names to his attorney, the counsel cannot be deemed ineffective for failing to call character witnesses. *See Commonwealth v. Walker,* 540 Pa. 80, 96–97, 656 A.2d 90, 98 (1995).

In the present case, the record supports the PCRA court's factual determination that Welch had discussed with Dupert the importance of character witnesses, but Dupert refused, or neglected, to provide any names to Welch. After hearing testimony from both sides, the PCRA court concluded that Dupert's father never offered to provide Welch with a list of names at trial. Dupert simply did not carry his burden of proof to show that Welch knew of any potential character witnesses. Consequently, Welch's reasonable basis for failing to call character witnesses was not his lack of asking, but his lack of information.

The Superior Court has confused the first prong with the second prong of the test to determine ineffectiveness of counsel. In *Weiss,* we clearly concluded that where there are only two direct witnesses, failure to present available character evidence creates a claim of *arguable merit,* which is the first prong. *See Weiss,* 530 Pa. at 6, 606 A.2d at 442. The defendant in *Weiss* fulfilled the second prong by demonstrating that trial counsel chose not to call any character witnesses because of his preconceived notions about their willingness to testify and the benefits of the testimony they could offer. *Id.*

at 6–8, 606 A.2d at 442–43. In the present case, the Superior Court has mistakenly suggested that any time there are only two direct witnesses in a criminal case, credibility is a paramount issue, and the defendant's trial counsel presents no character witnesses, the trial counsel, *a fortiori,* lacked a reasonable basis for his decision. Not only is that presumption a misinterpretation of our holding in *Weiss,* it does not make sense. Many good reasons can exist for not calling character evidence, such as when no people are willing to testify or when the defendant can supply no names.

## DISCRETION TO THE FACT FINDER

An appellate court must give great weight to the findings of a lower court concerning the credibility of witnesses in a post-conviction proceeding. *Commonwealth v. Madison,* 501 Pa. 485, 491, 462 A.2d 228, 231 (1983). The Superior Court examined the PCRA hearing record and determined that Welch had not discussed with Dupert the importance of presenting character testimony. Specifically, the Superior Court concluded that Welch never testified that his customary practice is to discuss the use of character evidence with his clients; the trial counsel merely stated what he usually does after a client gives him names. That conflicting factual finding belies the evidence relied on by the PCRA court. Explaining his customary practice at the PCRA hearing, Welch testified that "the way I do it is to ask the client to tell me who can be the character witnesses ... If a client tells me that he has character witnesses, then I must pursue them." N.T. PCRA Hearing, Aug. 13, 1996 at 38 (R.R. 42).

The PCRA court acknowledged that Welch could not recall having a specific conversation about character witnesses. Nonetheless, the PCRA court had sufficient evidence before it to find that Welch had a practice of informing his clients about the importance of character evidence, and Dupert failed to demonstrate that his attorney strayed from his routine. The record fully supports the finding of the PCRA court, which held that Welch pursued no leads because he had no leads.

## CONCLUSION

The Superior Court committed an error of law by upsetting the decision of the PCRA court, which was based on sufficient evidence. Because Dupert's trial counsel had a reasonable basis for not presenting character evidence, I believe that we must reverse the Superior Court and vacate its Order to remand for a new trial.

Justices ZAPPALA and CASTILLE join this dissenting statement.