## Commonwealth v. Russin

*Joseph P. McMahon,* for Commonwealth.
*James J. Karl,* for defendant.

CULLEN, *J.,* June 10, 2009—On January 6, 2006, a jury found defendant, Keith Michael Russin, guilty of aggravated indecent assault,[1] indecent assault[2] and corruption of minors.[3]

These charges resulted from an incident that occurred on April 2 and 3, 2005, when the 34-year-old defendant

---

1. 18 Pa.C.S. §3125(a)(1).
2. 18 Pa.C.S. §3126(a)(1).
3. 18 Pa.C.S. §6301(a)(1).

touched the breasts and digitally penetrated the vagina of his stepdaughter's 16-year-old friend while the victim was asleep. Defendant denied the victim's accusations and argued that she fabricated the allegations against him. The jury, however, found the victim credible.

On June 23, 2006, following completion of a pre-sentence report, defendant was sentenced to a term of imprisonment of not less than two nor more than five years for aggravated indecent assault and a consecutive term of five years probation for corruption of minors. A concurrent sentence of two years probation was imposed for the offense of indecent assault. Defendant's aggregate sentence was not less than two nor more than five years imprisonment followed by five years probation.

Defendant filed a timely notice of appeal to the Superior Court which affirmed the judgment of sentence on August 14, 2007. *Commonwealth v. Russin,* no. 1579 MDA 2006 (August 14, 2007). The Pennsylvania Supreme Court denied his petition for allowance of appeal on December 24, 2007. *Commonwealth v. Russin,* no. 745 MAL 2007 (December 24, 2007).

On February 1, 2008, defendant filed a motion for post-conviction collateral relief, and counsel was appointed to represent him. On October 10, 2008, defendant filed an amended petition for relief under the Post Conviction Relief Act. An evidentiary hearing was held on February 6, 2009. At the conclusion of the hearing, the court ordered the notes of testimony transcribed and established a briefing schedule. The parties have filed briefs in support of their respective positions, and the matter is now ready for disposition.

## DISCUSSION

In order to be eligible for relief under the Post Conviction Relief Act,[4] a defendant must satisfy the requirements of 42 Pa.C.S. §9543 which provides in pertinent part:

*"Section 9543. Eligibility for relief*

*"(a) General rule.*—To be eligible for relief under this subchapter, the petitioner must plead and prove by a preponderance of the evidence all of the following:

"(1) That the petitioner has been convicted of a crime under the laws of the Commonwealth and is at the time relief is granted:

"(i) currently serving a sentence of imprisonment, probation, or parole for the crime; . . .

"(2) That the conviction or sentence resulted from one or more of the following: . . .

"(ii) Ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. . . .

"(4) That the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." 42 Pa.C.S. §9543(a).

The defendant bears the burden of establishing by a preponderance of the evidence that his conviction re-

---

4. 42 Pa.C.S. §9541 et seq.

sulted from one or more of the enumerated errors listed in the Act. *Commonwealth v. Zook,* 585 Pa. 11, 26, 887 A.2d 1218, 1226 (2005); *Commonwealth v. Crawley,* 541 Pa. 408, 412, 663 A.2d 676, 678 (1995).

Since defendant's post-conviction petition involves a claim of ineffective assistance of counsel, the following standards apply. Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. *Commonwealth v. Dennis,* 597 Pa. 159, 174, 950 A.2d 945, 954 (2008). To obtain relief, the petitioner must demonstrate that counsel's performance was deficient and that deficiency prejudiced the petitioner. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068; *Commonwealth v. Mallory,* 596 Pa. 172, 201, 941 A.2d 686, 704 (2008). Applying the *Strickland* performance and prejudice test, the Pennsylvania Supreme Court has noted that a properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission. *Commonwealth v. Tedford,* 598 Pa. 639, 659-60, 960 A.2d 1, 12 (2008) (citing *Commonwealth v. Pierce,* 515 Pa. 153, 157-58, 527 A.2d 973, 975 (1987) (adopting U.S. Supreme Court's holding in *Strickland*)).

With regard to the first prong of the ineffective assistance of counsel standard, if a criminal defendant can demonstrate the existence of an actual conflict of interest which adversely affected his counsel's performance, then he is entitled to a new trial. *Commonwealth v. Padden,* 783 A.2d 299, 309 (Pa. Super. 2001). To make such a showing, the defendant must demonstrate that counsel "*actively represented* conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 309-310 (citing *Commonwealth v. Buehl,* 510 Pa. 363, 379, 508 A.2d 1167, 1175 (1986) (emphasis in original)) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 348, 350, 100 S.Ct. 1708, 1718-19 (1980)). "[A]n actual conflict of interest exists whenever, during the course of representation, there is a divergence between the interest[s] of the defendant and the interest[s] of another client [to] whom defense counsel bears obligations with respect to a material factual or legal issue or to a cause of action." *Commonwealth v. Karenbauer,* 552 Pa. 420, 437, 715 A.2d 1086, 1094 (1998) (citing *In re Saladin,* 359 Pa. Super. 326, 332, 518 A.2d 1258, 1261 (1986)). The showing of a mere possibility of a conflict of interest "is insufficient to impugn a criminal conviction." *Commonwealth v. Munson,* 419 Pa. Super. 238, 245, 615 A.2d 343, 347 (1992) (quoting *Cuyler,* 446 U.S. at 350, 100 S.Ct. at 1719).

In evaluating the second prong of the standard which requires an examination of counsel's conduct, the court must not employ a hindsight evaluation that examines whether other alternative actions were more reasonable.

*Commonwealth v. Zook,* 585 Pa. 11, 26, 887 A.2d 1218, 1227 (2005). Rather, a court must deem counsel to have been effective so long as the course which counsel chose was not unreasonable in acting to effectuate his or her client's interests. *Id.* Thus, a party must demonstrate that counsel's strategy was "so unreasonable that no competent lawyer would have chosen that course of conduct." *Commonwealth v. Chmiel,* 585 Pa. 547, 614, 889 A.2d 501, 541 (2005) (citing *Commonwealth v. Williams,* 537 Pa. 1, 29, 640 A.2d 1251, 1265 (1994)).

The third prong of the standard may be the most crucial. The Pennsylvania Supreme Court has consistently held that if the party asserting the claim has not established the prejudice prong, the claim may be dismissed on that basis alone without a determination of whether the party met the first two prongs of the standard. *Chmiel,* 585 Pa. at 613, 889 A.2d at 540; *Commonwealth v. Brown,* 582 Pa. 461, 481, 872 A.2d 1139, 1150 (2005); *Commonwealth v. Travaglia,* 541 Pa. 108, 118, 661 A.2d 352, 357 (1995). This "prejudice inquiry requires consideration of the totality of the evidence." *Commonwealth v. Spotz,* 582 Pa. 207, 228 n.15, 870 A.2d 822, 834 n.15 (2005) (quoting *Strickland,* 466 U.S. at 695, 104 S.Ct. at 2069). Prejudice is presumed when counsel is burdened by an actual conflict of interest. *Buehl,* 510 Pa. at 379, 508 A.2d at 1175.

"A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Commonwealth v. Bedell,* 954 A.2d 1209, 1211 (Pa. Super. 2008) (quoting *Commonwealth v. Bryant,* 579 Pa. 119, 136, 855 A.2d 726, 736 (2004)).

As fact-finder in a proceeding for post-conviction relief that is based on a claim of ineffective assistance of counsel, the credibility of witnesses remains exclusively within the province of the hearing court. *Commonwealth v. Pate,* 421 Pa. Super. 122, 132, 617 A.2d 754, 760 (1992) (citing *Commonwealth v. Moore,* 321 Pa. Super. 442, 450-51, 468 A.2d 791, 795 (1983)). An appellate court, therefore, "must give great weight to the findings of a lower court concerning the credibility of witnesses in a post-conviction proceeding." *Commonwealth v. Dupert,* 555 Pa. 547, 557, 725 A.2d 750, 755 (1999) (citing *Commonwealth v. Madison,* 501 Pa. 485, 491, 462 A.2d 228, 231 (1983)).

In his amended petition for relief under the Post Conviction Relief Act, defendant claims that his attorney[5] was ineffective because counsel had a conflict of interest during the course of the representation which was not disclosed to defendant.

Although some points are unclear, there does not appear from the record to be significant dispute about the basic facts concerning the relationship between defendant's attorney and the uncle of the victim on which defendant relies to support his assertion that a conflict of interest existed. Defendant's retained counsel, Allan L. Sodomsky, maintains an active criminal practice with an office in Reading, Berks County, Pennsylvania. (N.T.

---

5. Defendant was represented by privately retained counsel from April 2005, prior to the filing of criminal charges, through the denial of the petition for allowance of appeal by the Supreme Court. Defendant is currently represented by the Office of the Public Defender.

Feb. 6, 2009, at 4-6.) The victim of these offenses, K.D., resides in Ephrata, Lancaster County, Pennsylvania, with her family. (*Id.* at 8.) Mr. Sodomsky is familiar with the Ephrata area which is approximately 20 minutes from his office. *(Id.)*

When Mr. Sodomsky's daughter was 12 years old, she played on a girls under-13 traveling volleyball team in Berks County. (*Id.* at 14-15.) For one year, L.D., the daughter of E.D., played on the same team. (*Id.* at 14-15, 33-34.) L.D. is the first cousin of the victim, and E.D. is the victim's uncle. (*Id.* at 13, 30.) Mr. Sodomsky has a great interest in volleyball and attended almost all of his daughter's practices and games while she was on the traveling team. (*Id.* at 14.) He became acquainted with the other players as well as their parents and would exchange pleasantries with them although he generally sat by himself. (*Id.* at 14-15, 34.) E.D. testified that on one occasion he thanked Mr. Sodomsky for donating either uniforms or warm-ups to the team. (*Id.* at 35.)

In the fall of 2006, L.D. transferred to Wyomissing High School and played on the school volleyball team with Mr. Sodomsky's daughter for the next two years. (*Id.* at 15-16, 34.) Both young women graduated in June 2008. (*Id.* at 16, 33.) During this period, Mr. Sodomsky attended games where he would see E.D. (*Id.* at 18.) On one occasion during the fall of 2007, their daughters' senior year, Mr. Sodomsky and E.D. drove to a volleyball tournament together and brought bagels for the team. (*Id.* at 18, 24.)

Mr. Sodomsky testified that he would like to believe that he and E.D. are friends, (*id.* at 26), although he had very limited contact with him. (*Id.* at 21, 26). E.D. confirmed that he had no social relationship with defendant's attorney other than their daughters' participation in volleyball. (*Id.* at 35-36).

There is a dispute regarding when Mr. Sodomsky realized the relationship between the victim and E.D., and when he informed defendant of his connection to the victim's uncle.

Mr. Sodomsky testified that when he saw the criminal complaint, he recognized the name of the victim and recalled that a number of years before he knew a family, primarily the mother and daughter, of that name through his daughter's participation in under-13 volleyball. (*Id.* at 14.) Counsel assumed there could be no relationship because, as he stated, "What are the odds?" *(Id.)* He had no reason at that time to believe the family he knew from volleyball was related to the victim. (*Id.* at 24.)

Mr. Sodomsky testified that he disclosed his relationship with the victim's uncle to defendant when counsel "became aware" of that relationship, "in a face-to-face meeting" with defendant "sometime between the preliminary hearing and the trial." (*Id.* at 13-14.) Upon further questioning relating to the circumstances in which he would have had contact with the victim's uncle, it became apparent that Mr. Sodomsky was using the fall of 2006, when L.D. joined or was about to join the Wyomissing High School volleyball team, as a point of

reference. He then corrected his testimony to reflect that he informed defendant of the relationship in the "fall of 2006." (*Id.* at 20-23, 27.) Mr. Sodomsky stated that he did not remember defendant reacting abnormally after being told of the relationship in the fall of 2006. (*Id.* at 27.) When shown a copy of the appellate brief filed on defendant's behalf, Mr. Sodomsky stated that he believed he informed defendant of his connection to the victim's uncle before September 27, 2006. (*Id.* at 29.)

E.D testified that he was unaware that Mr. Sodomsky was representing defendant until early February or early March 2006, after the trial, but before sentencing. (*Id.* at 31, 36.) He stated that he attended the sentencing to support his niece and saw Mr. Sodomsky, but did not speak to him, exchange greetings or shake hands with him. (*Id.* at 32, 37.)

Defendant's testimony differs from that of Mr. Sodomsky with respect to the time when Mr. Sodomsky disclosed to defendant the relationship with the victim's uncle. As referenced above, Mr. Sodomsky placed this event in the fall of 2006. (*Id.* at 20-23, 27.) Defendant and his wife, however, testified that Mr. Sodomsky made this disclosure only minutes before defendant entered the courtroom for sentencing on June 23, 2006. (*Id.* at 47-49, 56-58.) "Mr. Sodomsky told myself and my wife, don't be surprised if I walk up to this man and shake his hand and say hello. He's [the victim's] uncle, and our daughters play on a sports team together and I just saw him recently and he was going to be here." (*Id.* at 47.) Defendant stated that after he received this information,

he thought he had to continue using Mr. Sodomsky's services for sentencing and direct appeal because he had already paid him a retainer. *(Id.)* Defendant continued to state that if he had known about the relationship prior to trial, he would have hired another attorney. (*Id.* at 48.)

When asked specifically about what occurred at sentencing, Mr. Sodomsky stated he did not recall E.D. being present at sentencing or discussing his presence with defendant. (*Id.* at 12, 19-20.) He conceded, however, that it was possible E.D. was at sentencing and that he had spoken to him, but not concerning anything of significance. (*Id.* at 22-23, 27-28.)

E.D. denied having any contact with Mr. Sodomsky before or after sentencing. (*Id.* at 32, 37.) While he saw Mr. Sodomsky, he was unaware if the attorney had seen him until the end of the proceeding. (*Id.* at 32.)

The court finds the testimony of Mr. Sodomsky and E.D. to be credible regarding the nature of their relationship. While they are cordial to each other, their relationship is very superficial and limited to their daughters' participation in a common activity. There is no evidence of any relationship between the two that does not concern their daughters playing volleyball.

The court also finds E.D.'s testimony credible regarding what occurred at the time of sentencing. E.D. has the least interest of any of the witnesses in the outcome of this proceeding. There is no need to determine whether defendant's recollection and that of his wife as to what happened prior to sentencing is accurate since, even if

Mr. Sodomsky did identify E.D. to them, defendant is not entitled to relief.

Defendant asserts that his attorney's relationship with the victim's uncle constitutes a conflict of interest under Rule 1.7 of the Pennsylvania Rules of Professional Conduct, and because Mr. Sodomsky did not make full disclosure to defendant pursuant to Rule 1.7, counsel was burdened by a conflict of interest rendering him ineffective.

It is well established that the Rules of Professional Conduct address the grounds for disciplinary actions against attorneys. *Donald J. Weiss & Associates P.C. v. Tulloch,* 961 A.2d 862, 863 (Pa. Super. 2008) (citing *In re Estate of Wood,* 818 A.2d 568, 573 (Pa. Super. 2003)). "Those rules are not substantive law." *Id.* (citation omitted) Thus, a violation of a Rule of Professional Conduct does not, ipso facto, translate into a meritorious ineffective assistance of counsel claim.

To establish the existence of an actual conflict of interest, defendant must prove that his attorney "*actively represented* conflicting interests and that an actual conflict of interest adversely affected his attorney's performance," *Commonwealth v. Padden,* 783 A.2d 299, 309-10 (Pa. Super. 2001) (emphasis in original) (citing *Commonwealth v. Buehl,* 510 Pa. 363, 379, 508 A.2d 1167, 1175 (1986) (citing *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718-19 (1980)).

Defendant argues that the relationship between Mr. Sodomsky and E.D. amounts to a "personal interest conflict" under Rule 1.7 of the Pennsylvania Rules of

Professional Conduct. After reviewing the record, however, the court finds this assertion is devoid of substantive merit.

It appears Mr. Sodomsky and E.D. first met when their daughters were approximately 12 years old and played together for one year on a traveling volleyball team.[6] Their relationship consisted of superficial conversations about their daughters' volleyball team and polite greetings in passing. (N.T. Feb. 6, 2009, at 15, 23, 24, 32, 34-35, 37.) After this experience, there is no evidence of any interaction between the two men until the fall of 2006 when E.D.'s daughter, L.D., transferred to Wyomissing High School and again played on the same team as Mr. Sodomsky's daughter. This inconsequential relationship based only on their shared interest in their daughters' participation in volleyball resumed on the same level as before. Under the interpretation of the evidence most favorable to defendant, Mr. Sodomsky did not realize the relationship between E.D. and the victim until sentencing in June 2006.

In support of his position, defendant has referred to the comment to Rule 1.7 as well as general ethics references. Despite this research, he has failed to cite a court decision or an opinion from any bar association or disciplinary board which would indicate that the relationship reflected in the record could constitute a conflict of interest.[7]

---

6. Based on L.D.'s age in June 2008, the girls would have been on the same team in 2002.

7. The court also notes that defendant never claimed at the evidentiary hearing that he complained to Mr. Sodomsky about this perceived conflict or sought to rectify it in any manner.

Under the circumstances, defendant has failed to prove the existence of an actual conflict of interest. Accordingly, the court finds that his claim lacks substantive merit and defendant is not entitled to relief.[8]

The court, therefore, enters the following:

## ORDER

And now, June 10, 2009, upon consideration of the amended petition for relief under the Post Conviction Relief Act, it is ordered that the amended petition is denied.

---

8. Defendant suggests in his brief that the relationship between Mr. Sodomsky and E.D. could have affected the attorney's conduct to defendant's detriment. There is no support in the record for this suggestion. Defendant testified that defense counsel declined the offer of witnesses to testify about the victim's character at trial. (N.T. Feb. 6, 2009, at 43.) Defendant has failed to identify these witnesses, indicate that they were available and willing to testify and provide the substance of their testimony. When this issue was raised, Mr. Sodomsky explained that such testimony would be inadmissible under the Rape Shield Law. (*Id.* at 10, 45.) The purpose of Pennsylvania's Rape Shield Law, 18 Pa.C.S. §3104, is to prevent a sexual assault trial from denigrating into an attack upon the victim's reputation for chastity. *Commonwealth v. Killen,* 545 Pa. 127, 132, 680 A.2d 851, 853 (1996).

Defendant also appears to call into question defense counsel's strategy of relying on cross-examination to challenge the victim's version of events and notes, that at trial counsel was unable to provide the jury with a specific reason why the victim made her accusations. Again, defendant has offered no evidence to demonstrate that counsel's strategy was unreasonable and not designed to further defendant's interest, nor has defendant provided any evidence to support any specific motive by the victim to fabricate the charges against him which counsel unreasonably failed to pursue.