J-S21036-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISIAH COLBERT | : | |
| | : | |
| Appellant | : | No. 1466 WDA 2019 |

Appeal from the PCRA Order Entered August 27, 2019
in the Court of Common Pleas of Fayette County
Criminal Division at No(s):  CP-26-CR-0001487-2016

BEFORE:  LAZARUS, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JULY 21, 2020**

Isiah Colbert ("Colbert") appeals from the Order denying his Petition for relief filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The PCRA court summarized the facts underlying the instant appeal as follows:

> In the early morning hours of February 27, 2016, [] Colbert and a co-defendant, Bobbi Jo Mack [("Mack") (collectively, "the defendants")], were out drinking in Uniontown.  The victim was at the same bar as the [] defendants, celebrating her 19th birthday.  Between midnight and 1:30 [a.m.], the victim went to the Frick Tri County Credit Union to withdraw money from an ATM.  [The defendants] attacked the victim at the ATM.  [] Colbert hit the victim in her face and knocked her to the ground.  [] Mack then came over and began kicking and hitting the victim.  The defendants took the $250 that the victim had just withdrawn from the ATM, [and] then had the victim withdraw $100 more from the ATM.

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

[The defendants] then took the victim to the vehicle they were using and put her in the car. The defendants drove to a PNC [Bank] ATM, where they had the victim withdraw another $120. The defendants then drove the victim to another PNC [Bank] ATM, where they had her withdraw another $20. The defendants then walked the victim back to the car and put her in the trunk.

[The defendants] then drove the victim to the Coolspring Ballfield in North Union Township. The defendants then beat the victim, and [] Colbert took the victim into the woods, where her shoes, driver's license, wallet, ATM receipts, and other personal items were later found. The victim was then left there.

The victim laid there for two hours, severely beaten, wearing only leggings, a t-shirt, and a sweater, before getting up and walking to a house in Jumonville. It was 23 degrees Fahrenheit outside. The homeowners took the victim inside and called 911. The victim was transported to [the hospital.] She suffered two subdural hematomas, a traumatic hematoma of the face, and a broken back. She also had cuts and bruises all over her body. [Evidence of a sexual assault also was found.]

At the guilty plea proceedings, [] Colbert disputed some of the facts asserted by the Commonwealth—he claimed he did not put the victim in the trunk—but he did not dispute that the Commonwealth could present evidence and witnesses to testify to those facts. [] Colbert then pleaded guilty to attempted homicide, aggravated assault, kidnapping, robbery, criminal conspiracy, sexual assault, unlawful restraint, theft by unlawful taking, and simple assault. On April 26, 2017, [] Colbert was sentenced to a period of incarceration of 27½ to 55 years. [Colbert did not file a direct appeal of his judgment of sentence.]

On August 7, 2018, [] Colbert filed a *pro se* Petition for Post-Conviction Relief. [Counsel] was appointed to represent [] Colbert[,] [who] filed an Amended PCRA Petition on March 25, 2019. A hearing on the Amended Petition was held on June 24, 2019.

PCRA Court Opinion, 8/27/19, at 1-3 (some capitalization omitted). After a

hearing, the PCRA court subsequently denied Colbert's PCRA Petition. Colbert

timely filed a Notice of Appeal, followed by a court-ordered Pa.R.A.P. 1925(b)

Concise Statement of matters complained of on appeal.

Colbert presents the following claim for our review:

Whether the evidence presented at the [PCRA] hearing warranted the denial of post-conviction collateral relief, even though the evidence showed that [Colbert] was induced to plead guilty to the respective charges, and [Colbert] was innocent of the charges of attempted homicide, aggravated assault, [] sexual assault, and the related conspiracy charges?[2]

Brief for Appellant at 7 (footnote added).

As our Supreme Court has explained,

[u]pon reviewing an order in a PCRA matter, we must determine whether the findings of the PCRA court are supported by the record and whether the court's legal conclusions are free from error. The findings of the PCRA court and the evidence of record are viewed in a light most favorable to the prevailing party. The PCRA court's credibility determinations, when supported by the record, are binding; however, this court applies a *de novo* standard of review to the PCRA court's legal conclusions. We must keep in mind that the petitioner has the burden of persuading this Court that the PCRA court erred and that such error requires relief. Finally, this Court may affirm a valid judgment or order for any reason appearing of record.

*Commonwealth v. Montalvo*, 205 A.3d 274, 286 (Pa. 2019) (citations omitted).

Colbert claims that his plea was unlawfully induced, "because [c]ounsel would withdraw from his case unless he pleaded guilty." Brief for Appellant at 20. Colbert states that at the plea hearing, multiple disputes arose between

---

[2] *See* 18 Pa.C.S.A. §§ 901, 2702, 3122.1, 903.

him and his counsel on how to approach the case. *Id.* Colbert informed his counsel that he had passed out after the events at the third ATM. *Id.* Colbert asserts that his memory was impaired because he had been drinking hard liquor for a three-day "binge," and was taking Xanax. *Id.* at 21. According to Colbert, "[t]his was not pursued as his defense, and there seemed to be a huge disconnect between [Colbert] and [c]ounsel as to whether or not he 'blacked out' or 'passed out' after the third ATM." *Id.* at 20.

Colbert further contends that at the plea hearing, "there appeared to be issues relative to whether or not the plea was voluntary, knowingly and intelligently entered." *Id.* at 20-21. Colbert argues that he was induced to plead guilty by plea counsel's threat to withdraw from representation. *Id.* at 20. Further, Colbert argues that he was taking medications and had smoked marijuana prior to the plea hearing. *Id.* at 21. According to Colbert, he denied placing the victim in the trunk of the vehicle and did not sexually assault the victim. *Id.*

Colbert concedes that he assaulted and robbed the victim. *Id.* However, he "ardently contends that he passed out after the events at the third ATM." *Id.* However, because he does not remember the subsequent events, Colbert claims that he could not be guilty of attempted homicide, aggravated assault, sexual assault, and the related conspiracy charges. *Id.* at 21-22.

Initially, we observe that Colbert's appellate brief includes no citations to the Notes of Testimony or certified record in support of his claim.

> The Rules of Appellate Procedure require that appellants adequately develop each issue raised with discussion of pertinent facts and pertinent authority. **See** Pa.R.A.P. 2119. It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim. **Commonwealth v. Mulholland**, … 702 A.2d 1027, 1034 n.5 (Pa. 1997). Further, this Court will not become counsel for an appellant and develop arguments on an appellant's behalf. **Commonwealth v. Gould**, 912 A.2d 869, 873 (Pa. Super. 2006)….

**Commonwealth v. Samuel**, 102 A.3d 1001, 1005 (Pa. Super. 2014). Notwithstanding, we decline to deem Colbert's claim waived.

In its Opinion, the PCRA court addressed Colbert's claim and concluded that Colbert is not entitled to PCRA relief. **See** PCRA Court Opinion, 8/27/19, at 4-9. We agree with the sound reasoning of the PCRA court, as set forth in its Opinion, and affirm on this basis with regard to Colbert's claim.[3] **See id.**

Order affirmed.

---

[3] We emphasize the PCRA court's determination that Colbert's PCRA Petition is facially untimely. PCRA Court Opinion, 8/27/19, at 5-6. Notwithstanding, we agree with the PCRA court determination that, even if Colbert had timely filed his Petition, he is not entitled to relief. **See id.** at 6-9.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/21/2020</u>

IN THE COURT OF COMMON PLEAS OF FAYETTE COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| ISIAH COLBERT, | : | |
| | : | |
| Petitioner. | : | No. 1487 of 2016 |

## OPINION

Linda R. Cordaro, J.

### SUMMARY

Before the Court is Isiah Colbert's Petition for Post-Conviction Relief. Petitioner

raises two challenges: Ineffectiveness of Counsel and an Unlawfully Induced Guilty Plea.

After a Hearing on the matter, the Petition is Denied.

### BACKGROUND

Petitioner, Isiah Colbert, was charged with multiple criminal counts related to an

incident that occurred on February 27, 2016. Guilty Plea Proceedings were held on April

19, 2017, at which time the Commonwealth read into the record what the evidence

would be at trial.

In the early morning hours of February 27, 2016, Mr. Colbert and a co-defendant,

Bobbi Jo Mack, were out drinking in Uniontown. The victim was at the same bar as the

two defendants, celebrating her 19th birthday. Between midnight and 1:30 AM, the

victim went to the Frick Tri County Credit Union to withdraw money from an ATM. Mr.

Colbert and Ms. Mack attacked the victim at the ATM. Mr. Colbert hit the victim in her

face and knocked her to the ground. Ms. Mack then came over and began kicking and hitting the victim. The defendants took the $250 that the victim had just withdrawn from the ATM, then had the victim withdraw $100 more from the ATM.

Mr. Colbert and Ms. Mack then took the victim to the vehicle they were using and put her in the car. The defendants drove to a PNC ATM, where they had the victim withdraw another $120. The defendants then drove the victim to another PNC ATM, where they had her withdraw another $20. The defendants then walked the victim back to the car and put her in the trunk.

Mr. Colbert and Ms. Mack then drove the victim to the Coolspring ballfield in North Union Township. The defendants then beat the victim, and Mr. Colbert took the victim into the woods, where her shoes, driver's license, wallet, ATM receipts, and other personal items were later found. The victim was then left there.

The victim laid there for two hours, severely beaten, wearing only leggings, a t-shirt, and a sweater, before getting up and walking to a house in Jumonville. It was 23 degrees Fahrenheit outside. The homeowners took the victim inside and called 911. The victim was transported to Ruby Memorial Hospital in Morgantown, West Virginia. She suffered two subdural hematomas, a traumatic hematoma of her face, and a broken back. She also had cuts and bruises all over her body.

At the Guilty Plea Proceedings, Mr. Colbert disputed some of the facts asserted by the Commonwealth—he claimed he did not put the victim in the trunk—but he did not dispute that the Commonwealth could present evidence and witnesses to testify to those facts. Mr. Colbert then pleaded guilty to Attempted Homicide, Aggravated Assault, Kidnapping, Robbery, Criminal Conspiracy, Sexual Assault, Unlawful Restraint, Theft

by Unlawful Taking, and Simple Assault.[1] On April 26, 2017, Mr. Colbert was sentenced to a period of incarceration of 27 1/2 to 55 years.

On August 7, 2018, Mr. Colbert filed a *pro se* Petition for Post-Conviction Relief. Attorney Skala was appointed to represent Mr. Colbert and filed an Amended PCRA Petition on March 25, 2019. A Hearing on the Amended Petition was held on June 24, 2019.[2]

In his Amended PCRA Petition, Mr. Colbert alleges that his trial counsel was ineffective and that his guilty plea was unlawfully induced. First, Mr. Colbert claims that his counsel threatened to withdraw if he did not enter a guilty plea. Second, Mr. Colbert claims that he often argued with his counsel during their discussions with him. Third, Mr. Colbert claims that his counsel never reviewed discovery with him.

Before his guilty plea, Mr. Colbert was represented by Attorney Diane Zerega and Attorney Kim Kovach. Both Attorney Zerega and Attorney Kovach testified at the PCRA Hearing.[3] Both testified that they met several times with Mr. Colbert prior to him entering a guilty plea. They both testified that Mr. Colbert was lucid and understood their conversations. Both attorneys also testified that, while they had some disagreements with Mr. Colbert at times, there were never any full-fledged arguments, and neither threatened to withdraw from the representation if he did not enter a guilty plea. Further, Attorney Zerega testified that both her and Attorney Kovach went over

---

[1] Counts 5, 7, and 9 were *nolle prossed*. Those charges included Rape by Forcible Compulsion and two Criminal Conspiracy charges.
[2] A hearing on the Petition was originally scheduled for June 18, 2019. However, when Petitioner was brought in for the hearing, he related to the Court that he could not proceed because he had not been given his medication properly the night before, and could therefore not understand the proceedings. This Court rescheduled the hearing to June 24, 2019 and ordered that the Fayette County Prison follow Petitioner's medication scheduled as provided by SCI Forest. At the June 24 Hearing, Petitioner indicated that his medication had been provided properly and that he could understand the proceedings.
[3] Attorney Kovach was sequestered while Attorney Zerega testified.

discovery with Mr. Colbert, and that he understood what evidence the Commonwealth would present if the case went to trial.

## DISCUSSION

The Post-Conviction Relief Act provides an avenue for the incarcerated to obtain post-conviction collateral relief. 42 Pa.C.S.A. §9542. In order to be eligible for relief under the PCRA, a petitioner must plead and prove the following by a preponderance of the evidence:

1) That the petitioner has been convicted of a crime under the laws of this Commonwealth and is at the time relief is granted:

   i) Currently serving a sentence of imprisonment, probation[,] or parole for the crime;

   ii) Awaiting execution of a sentence of death for the crime; or

   iii) Serving a sentence [that] must expire before the person may commence serving the disputed sentence.

2) That the conviction or sentence resulted from one or more of the following:

   . . .

   ii) Ineffective assistance of counsel which in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.

   iii) A plea of guilt unlawfully induced where the circumstances make it likely that the inducement caused the petitioner to plead guilty and the petitioner is innocent.

   . . .

3) That the allegation of error has not been previously litigated or waived.

4) That the failure to litigate the issue prior to or during trial, during unitary review[,] or on direct appeal could not have been the result of any rational, strategic[,] or tactical decision by counsel.

*Commonwealth v. Rivers*, 786 A.2d 923, 925-26 (Pa. 2001) (citing the Post-Conviction Relief Act, 42 Pa.C.S. §9543(a)(1)-(4)).

Mr. Colbert satisfies the first standard for post-conviction relief in that he is currently incarcerated. However, this Court questions the timeliness of Mr. Colbert's Petition for Post-Conviction Relief and whether the allegations of error should be waived.

A PCRA petition must be filed within one year of the date that the judgment becomes final. *Commonwealth v. Fahy*, 737 A.2d 214, 217-18 (Pa. 1999) (citing 42 Pa.C.S.A. §9545(b)(1)). A judgment becomes final "at the conclusion of direct review . . . or at the expiration of time for seeking the review." *Id.* at 218 (citing 42 Pa.C.S. §9545(b)(3)). Pennsylvania Rule of Appellate Procedure 903 requires that a notice of appeal be filed "within 30 days after the entry of the order from which the appeal is taken."

Here, Mr. Colbert pleaded guilty on April 19, 2017 and was then sentenced on April 26, 2017. Mr. Colbert had 30 days to appeal that order, which would have been May 26, 2017. He did not appeal that order; the judgment therefore became final on May 26, 2017. Mr. Colbert had one year from that date to file a timely PCRA Petition, which would have been May 26, 2018. Mr. Colbert did not file a PCRA Petition until August 7, 2018—more than one year after his judgment of sentence became final.

After Mr. Colbert was sentenced, there were several hearings scheduled to determine whether he was a sexually violent predator. However, a PCRA "is not intended to . . . provide relief from collateral consequences of a criminal conviction." *Commonwealth v. Price*, 876 A.2d 988, 992 (Pa. Super. Ct. 2005) (citing 42 Pa.C.S.A.

§9542). As such, Mr. Colbert's *pro se* Petition, which was filed on August 7, 2018, was untimely as it should have been filed on or before May 26, 2018.

However, in the interest of justice, this Court will address Petitioner's PCRA Petition on its merits.

Mr. Colbert raises an ineffectiveness of counsel claim in his PCRA Petition.[4] There is a presumption that counsel provides effective representation, and a petitioner bears the burden of proving ineffectiveness by a preponderance of the evidence. *Commonwealth v. Faulk*, 21 A.3d 1196, 1200 (Pa. Super. Ct. 2011) (citing *Commonwealth v. Ligons*, 971 A.2d 1125, 1137 (Pa. 2009)). To prevail on an ineffectiveness of counsel claim, a petitioner must show: 1) that the underlying claim is of arguable merit; 2) that the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate the client's interests; and 3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different. *Faulk* at 1200 (citing *Commonwealth v. Ali*, 10 A.3d 282, 291 (Pa. 2010)). A petitioner must satisfy all three elements. *Id.*

Further, "[i]n order to be eligible for relief on a claim alleging ineffective assistance of counsel, a defendant must establish that counsel[']s representation fell below accepted standards of advocacy," which resulted in prejudice towards the defendant. *Commonwealth v. Miller*, 987 A.2d 638, 649 (Pa. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). Prejudice results when there is a reasonable

---

[4] The Petition also states that Mr. Colbert was unlawfully "induced to plead guilty by Defense Counsel." See Petition at Paragraphs 44-45. However, "[a]llegations that counsel misadvised a criminal defendant in the plea process are properly determined under the ineffectiveness of counsel subsection of the PCRA[,] not the section specifically governing guilty pleas." *Commonwealth v. Lynch*, 820 A.2d 728, 730 n.2 (Pa. Super. Ct. 2003) (citing *Commonwealth v. Hickman*, 799 A.2d 136, 140 (Pa. Super. Ct. 2002)).

probability that the outcome of a proceeding would have been different but for counsel's unprofessional errors. *Miller* at 649 (citing *Strickland* at 694).

Mr. Colbert first claims that his trial counsel was ineffective and that his guilty plea was unlawfully induced because his attorneys threatened to withdraw their representation if he did not enter a guilty plea. In *Commonwealth v. Sweeney*, 533 A.2d 473 (Pa. Super. Ct. 1987), the Superior Court noted that the "desertion of a client is abhorrent to the spirit of the legal profession" and "may also form the basis of a later collateral claim of ineffectiveness." *Id.* at 477. Further, Rule 1.2 of the Pennsylvania Rules of Professional Conduct states that "a lawyer shall abide by a client's decisions concerning the objectives of representation . . ." Rule 1.2(a). That Rule also states, "[i]n a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered . . ." *Id.* However, the Rules of Professional Conduct are not substantive law, nor does a violation result in an *ipso facto* meritorious ineffective assistance of counsel claim. *Commonwealth v. Russin*, 9 Pa. D. & C. 5th 338, 350 (Lancaster County 2009).

Regardless of whether a threat to withdraw representation for not taking a plea should be considered ineffectiveness of counsel, both Attorney Zerega and Attorney Kovach testified separately at the PCRA Hearing on this matter that they did not threaten to withdraw their representation if Mr. Colbert did not enter a guilty plea. This Court finds that the testimony of both Attorney Zerega and Attorney Kovach at the Hearing was credible. As a result, this Court does not find any merit to Mr. Colbert's claim that his trial counsel threatened to withdraw representation if he did not enter into a guilty plea.

Mr. Colbert's second claim is that his trial counsel was ineffective because they argued with him often. Petitioner did not provide this Court with any caselaw that stands for the proposition that an attorney who argues with a client is ineffective. In fact, the Rules of Professional Conduct state that, "[i]In representing a client, a lawyer shall exercise independent professional judgment and render candid advice. In rendering advice, a lawyer may refer not only to law but to other considerations such as moral, economic, social[,] and political factors[] that may be relevant to the client's situation." Pa. Rule of Prof. Conduct 2.1.

Attorney Zerega testified that her conversations with Mr. Colbert sometimes became argumentative. Attorney Zerega testified at the Hearing that Mr. Colbert "had a lot of ideas about the law that weren't quite correct." For example, she stated that Mr. Colbert thought the charges against him should be dropped because he was "blind drunk" for at least part of the incident. However, by correcting Mr. Colbert in his mistaken beliefs about the law and advising him accordingly, Attorney Zerega would have been acting in accordance with the Rules of Professional Conduct by rendering candid advice to Mr. Colbert.

Attorney Kovach testified that there was a good relationship between Mr. Colbert and his attorneys. She testified that Mr. Colbert became angry at times because he was in a bad situation, but that he was always engaged in the discussions regarding his case, and that there was always civility between them.

This Court finds the testimony of Attorney Zerega and Attorney Kovach to be credible, and that any disagreements between them and Mr. Colbert did not affect their representation of him.

Finally, Mr. Colbert claims that his trial counsel was ineffective because they never reviewed discovery with him. Both Attorney Zerega and Attorney Kovach testified at the PCRA Hearing that they provided Mr. Colbert with discovery and reviewed it with him at the jail. This Court finds the testimony of both Attorney Zerega and Attorney Kovach to be credible in this respect, and that this claim is therefore without merit.

## CONCLUSION

For the foregoing reasons, Mr. Colbert's Petition for Post-Conviction relief is Denied.

ATTEST:

BY THE COURT:

Clerk of Courts

Linda R. Cordaro, Judge

Dated: August 27, 2019